UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Elizabeth Hodgson,
f/k/a Elizabeth Shreve


    v.                              Case No. 18-cv-87-PB

Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration


**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Elizabeth Hodgson moves to reverse the Acting Commissioner's decision to deny her applications for Social Security disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 423, and for supplemental security income under Title XVI, 42 U.S.C. § 1382. (Doc. No. 10).  The Acting Commissioner, in turn, moves for an order affirming her decision.  (Doc. No. 14).  Those motions are before this magistrate judge for a report and recommendation.  For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ") should be affirmed.

**I. Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  Ward v.

Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). "Substantial-evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not." Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018) (quoting Bath Iron Works Corp. v. U.S. Dep't of Labor, 336 F.3d 51, 56 (1st Cir. 2003)).

Thus, though the evidence in the record may support multiple conclusions, the court will still uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). Ultimately, the court "must uphold a denial of social security . . . benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

**II. Background**[1]

The ALJ invoked the requisite five-step sequential evaluation process in assessing Hodgson's request for disability and disability insurance benefits.  See 20 C.F.R. §§ 404.1520.  After determining that she met the Social Security Act's insured status requirements and had not engaged substantial gainful activity after the alleged onset of her disability on November 15, 2009, see 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq., the ALJ analyzed the severity of Hodgson's impairments.  At this second step, the ALJ concluded that Hodgson had the following severe impairments: personality disorder (borderline), polysubstance abuse, and post-traumatic stress disorder (PTSD).  (Admin. R. at 34-35).

At the third step, the ALJ found that Hodgson's severe impairments did not meet or "medically equal" the severity of one of the impairments listed in the Social Security regulations.  (Id. at 36); see 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926.

After reviewing the medical evidence of record, medical opinions, and Hodgson's own statements, the ALJ concluded that Hodgson retained the residual functional capacity (RFC) to

---

[1] The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitation in their Joint Statement of Material Facts (Doc. No. 13) is incorporated by reference.

3

perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> She has the ability to understand, remember and carry out 1-to-3-step instructions during the course of a normal 8-hour workday and 40-hour work week, with normal breaks every two hours. She can maintain routine interaction with coworkers and routine collaboration with supervisors, but her contact with the public should be limited to brief and routine interaction.

(Id. at 38).

The ALJ found that, even limited in this manner, Hodgson would be able to perform her past work as a goat herder. In the alternative, the ALJ found that Hodgson could perform other jobs that exist in the national economy, such as cleaning and kitchen help. (Id. at 44-46). The ALJ accordingly found that Hodgson was not disabled within the meaning of the Social Security Act during the relevant time period. (Id. at 46); 20 C.F.R. §§ 404.1520(f), 416.920(f).

### III. Analysis

Hodgson challenges the ALJ's decision on three grounds: 1) that the ALJ failed to correctly weigh opinion evidence; 2) that the ALJ improperly assessed Hodgson's RFC; and 3) that the ALJ improperly assessed Hodgson's credibility with respect to the severity of her symptoms. The court addresses them in turn.

A. Opinion evidence

Hodgson first argues that the ALJ erred by not properly weighing her treating psychiatrists' opinions. Under the relevant regulations in effect at the time Hodgson filed her claim,

> [T]he opinion of a treating source is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When an ALJ does not give controlling weight to the opinion of a treating source, he must still determine how much weight to give that opinion by considering these factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source offering the opinion; and (6) any other relevant factors. See § 404.1527(c)(2)-(6). . . . . . Finally, an ALJ must give "good reasons in [his] decision for the weight [he] give[s] [a claimant's] treating source's opinion." 20 C.F.R. § 404.1527(c)(2)."

Crandlemere v. Berryhill, 2017 DNH 192, 16-17.

1. Drs. Sowden and McWilliams

Two of Hodgson's treating psychiatrists, Dr. Gillian Sowden and Dr. Geraldine McWilliams completed a Mental Medical Source Statement. They rated Hodgson as "seriously limited" (meaning having noticeable difficulty 11% to 15% of the time). They specifically opined that she would be unable to: 1) "complete a normal workday and work week without interruptions from psychologically based symptoms"; 2) "perform at a consistent

5

pace without a reasonable number and lengths of rest periods"; and 3) "get along with coworkers." They also predicted that Hodgson's would be unable to meet competitive standards in accepting supervisors' instruction and criticism and dealing with normal work stress. Finally, they stated that Hodgson's symptoms would likely cause her to miss more than four days of work per month. (Admin. R. at 1306-11).

The ALJ assigned Drs. Snowden's and McWilliams's opinion partial, rather than controlling, weight. After he noted that the RFC reflected the providers' opinion that Hodgson is seriously limited in her ability to interact with the general public and could not handle skilled or semiskilled work, the ALJ found that their opinions that Hodgson:

> would be unable to meet competitive standards for accepting instructions and criticism, deal with work stress, travel to unfamiliar places, use public transportation, and that the claimant would be absent from work for more than four days per month are inconsistent with the objective medical records that show that claimant was taking part time community college classes, caring for a young child, working part time, and participating in other activities, and medical records that indicated only mild limitations. The claimant reported that she drives and can go out alone, shop in stores daily, goes to AA/NA meetings three times per week. (Exhibit B4E, B18E).

(Admin. R. at 44).

Hodgson argues that the ALJ only selectively cited medical records and she points to evidence she claims conflicts with the ALJ's findings. (Clmt. Mem., Doc. 10-1, at 12-14.) For example, she notes reports of having difficulties concentrating, an

6

increase in PTSD symptoms and needing emotional and medical support. (Id. at 13; Admin. R. at 1221-25). While such evidence might be adequate to demonstrate that the ALJ could have reached other, supportable conclusions, it does not demonstrate that the ALJ's assessment of this evidence was unreasonable. See Gillen v. Colvin, 2017 DNH 037, 15-16 ("Claimant's argument is best construed as invitation to the court to reweigh the evidence before the ALJ, but that is an invitation the court must decline.")

Ultimately, the ALJ accepted much of Drs. Sowden's and McWilliams's opinion. He limited Hodgson to simple, 3-step tasks with only brief public interaction. (Admin. R. at 38). But he supportably discounted the opinion that she could handle no work stress, no interaction with supervisors or that would miss significant time from work. Specifically, he noted that Hodgson "loved" her full-time work at a dairy farm in 2014, and that she was able to drive, care for her infant child and home, and perform volunteer work. (Admin. R. at 60-61, 345, 1183, 1029, 1039). In addition, the ALJ also supportably found that Dr. Sowden's notes indicated only "mild-moderate" mental limitations. (Admin. R. at 1294).

Hodgson also argues that the ALJ improperly considered her daily activities. She asserts that the record shows that she was unable to complete two community college classes for one semester, that she needed help with childcare and that her work

7

was "unpaid, unsupervised and minimal/ungainful." (Clmt. Mem. Doc. No. 10-1, at 14). But the record also contains evidence that Hodgson completed two college classes with A's. (Admin. R. at 338, 1205, 1292, 1294). And, as previously noted, she reported on several occasions that she cared for her child without serious difficulty (Id. at 344, 1221, 1225, 1259, 1294), and that she loved her herding job at the dairy farm. (Id. at 1029, 1039). Against this backdrop, the ALJ did what he was required to do – provide reasons for not giving controlling weight to Drs. Sowers and McWilliams.

### 2. Therapist Judith Bush, ACSW

Hodsgson treated with Judith Bush seven times between May and July 2016. Although her treatment notes were not part of the record, Hodgson did submit Bush's one-page opinion letter. (Admin. R. at 1312). The AJL did not mention Bush's letter, in which she opined that the "combination of her physical challenges and mental and emotional conditions make it unlikely that she could sustain focus to perform routine unskilled work for a full workday." Id. Hodgson argues that the failure to consider the Bush letter warrants remand. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("Findings are not conclusive, however, if they are derived by ignoring evidence . . . ."); see also 20 C.F.R. § 416.927(c) ("Regardless of its source, we will evaluate every medical opinion we receive.").

While the Assistant Commissioner agrees that the ALJ should have mentioned the Bush opinion, (Doc. No. 14-1, at 6), she argues that remand is unnecessary. The Assistant Commissioner has the better of this argument. Ms. Bush's vague reference to "sustain[ing] focus" for a full workday is arguably addressed by the every-two-hour breaks the ALJ included in Hodgson's RFC. In addition, Ms. Bush's conclusory assertion that Hodgson "is qualified to receive disability benefits," (Admin. R. at 1213), is an administrative finding reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). As such, the ALJ's apparent failure to consider the Bush opinion letter is, at most, harmless error. See Johnson v. Colvin, No. 1:13-cv-406-DBH, 2014 WL 5394954, at *3 (D. Me. Oct. 21, 2014) (adopting rep. & rec.) (finding harmless error where ALJ failed to address a bare conclusion that the claimant could not work, "[a] matter that is reserved to the commissioner.").

3. Therapist Hyde and state agency consultants

One of Hodgson's treating therapists, Hilde Hyde, completed a mental impairment questionnaire in which she opined that Hodgson would miss about three days of work per month. (Admin. R. at 1301-04). Hyde also noted that Hodgson had no more than mild restrictions in her activities of daily living, moderate difficulties in maintaining social function and concentration, persistence and pace, and no episodes of decompensation within 12 months.

9

The ALJ assigned Ms. Hyde's opinion "some weight" because it was consistent with her treatment notes and other medical record regarding some exacerbation of Hodgson's symptoms. (Admin. R. at 43).  But the ALJ rejected Ms. Hyde's conclusion about workplace absences because that finding was inconsistent with non-examining state-agency psychological consultants Joseph Patalano, Ph.D. and Edward Hurley, Ph.D. (Id. at 43), to whose opinions the ALJ assigned substantial weight.

Hodgson argues that the ALJ should have given more weight to Hyde's opinion and less to the state consultants.  The court finds no error.  Hodgson incorrectly asserts that the ALJ failed to give good reasons for giving only "some weight" to Hyde's opinion.  Initially, the court notes that Hyde is an "other source" under the applicable Social Security regulations, and thus the ALJ was not required to give "good reasons" for assigning weight to her opinion.  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  Nevertheless, as noted above, the ALJ explained that Hyde's opinion with respect to absenteeism was inconsistent with those of Drs. Hurley and Patalano.  The state agency consultants concluded that Hodgson "may have episodic problems with concentration/pace due to episodic increases in anxiety/depression . . . which temporarily undermine cognitive efficiency.  Otherwise from a psych perspective, can sustain concentration persistence/pace for 2 hour periods over 8 hour day through typical work week." (Admin. R. at 117, 132).

10

Hodgson next faults the ALJ for crediting the non-examining consultants' expertise in Social Security disability evaluations. (Id. at 43). An ALJ is permitted to rely "on the assessments of non-testifying, non-examining physicians" in adjudicating a claimant's RFC, and conflicts between those assessments and other medical testimony "are for the ALJ to resolve." Morin v. Astrue, 2011 DNH 091, 9-10 (citing Tremblay v. Sec'y of Health and Human Servs., 676 F.2d 11, 12 (1st Cir. 1982)). Indeed, the ALJ is "required to consider the opinions of state agency psychological consultants about the nature and severity of an applicant's impairments because state agency consultants 'are experts in the Social Security disability programs.'" Grant v. Colvin, 2015 DNH 059, 8-9, (quoting SSR 96-6p, Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians, 1996 WL 374180, at *2 (S.S.A. 1996)).[2]

Hodgson further argues that the ALJ improperly used only conclusory language in explaining why he gave substantial weight to the consultants' opinions. (Clmt. Mem., Doc. No. 10-1, at 19). It is true, as Hodgson asserts, that "[m]ore than a

---

[2] SSR 96-6P has since been rescinded and replaced, but was in effect when the ALJ issued his decision. See Social Security Ruling (SSR) 17-2p: Titles II and XVI: Evidence Needed by Adjudicators at the Hearings and Appeals Council Levels of the Administrative Review Process To Make Findings About Medical Equivalence, 82 FR 15263-02 (Mar. 27, 2017).

conclusory declaration is necessary, particularly [where] . . . the opinions of the non-examining physician and claimant's treating physician are so dramatically different." Mendoza v. Astrue, 2011 DNH 073, 12. But the ALJ did not do that here. First, the consultants' opinions were not "dramatically different" from Hodgson's own treatment providers. The only significant point of disagreement was whether Hodgson's "episodic increases" in symptoms would prevent her from working in two-hour increments over an eight-hour day. The nature of that difference notwithstanding, the ALJ here did more than conclusorily state that the consultants' opinions "are well supported by . . . the record." Cf. Swanburg v. Astrue, 2012 DNH 071, 17. He noted the consultants' expertise, their detailed explanations, and the fact that their opinions were, in large part, consistent with those of Hodgson's providers with respect to the mild or moderate nature of her symptoms. This is a sufficient explanation of the ALJ's reasoning.

In her final assertion of error with respect to the state agency consultants, Hodgson argues that their opinions cannot be given substantial weight because they pre-dated, and thus did not consider, the opinions of Sowden, McWilliams, Hyde and Bush. (Clmt. Mem., Doc. No. 10-1, at 19-20). "A state agency psychologist's opinion based on a review of an incomplete record may still constitute substantial evidence as long as the more recent evidence does not show 'a sustained (and material)

12

worsening in Plaintiff's condition.'" Grant, 2015 DNH 059, 10 (quoting Phan v. Colvin, 2014 WL 5847557, at *15 (D.R.I. Nov. 12, 2014)). While the latter providers noted psychological symptoms, they did not indicate that Hodgson's overall condition was worsening.  In fact, Dr. Sowden concluded that Hodgson's abilities were "limited, but satisfactory" in such areas as maintaining regular attendance and attention for two-hour periods and working with or in proximity to others. (Admin R. at 1308).

In sum, the court finds that the ALJ's decision to give greater weight to the state agency consultants than to Ms. Hyde is supported by substantial evidence.

B. Claimant's RFC

Hodgson takes issue with the portion of her RFC finding that she could "sustain understanding remembering and carrying out 1 to 3 step instructions during a normal 8 hour workday and 40-hour work week."  (Clmt. Mem., Doc. no. 10-1, at 21).  She argues that the RFC was not based on substantial evidence because it was contrary to the opinions concluding that she would be absent too often to sustain full-time work.

A claimant's RFC is "not a medical assessment, but instead is an administrative decision "reserved to the commissioner." Brownell v. Berryhill, No. 17-11462-FDS, 2018 WL 3150222, at *11 (D. Mass. June 27, 2018).  An ALJ is not precluded from "rendering common-sense judgments about functional capacity

based on medical findings, as long as [he] does not overstep the bounds of a lay person's competence and render a medical judgment." Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).

Here, the ALJ's RFC acknowledged Hodgson's limitations by restricting her interaction with the public and the complexity of instructions she may be required to follow. These limitations were generally consistent with the bulk of the opinions provided both by the state agency consultants and Hodgson's providers. The ALJ was not required to adopt the providers' work-absence conclusion. See Barrientos v. Sec'y of Health and Human Servs., 820 F.2d 1, 2-3 (1st Cir.1987) (permitting the ALJ to resolve an inconsistency between the medical reports of a treating and non-treating physician in favor of the non-treating physician). The ALJ's assessment of Hodgson's RFC is, therefore, supported by substantial record evidence.

### C.  Credibility

In rejecting Hodgson's claim that her mental impairments were totally disabling, the ALJ found that her statements concerning the severity of those impairments were not entirely consistent with other evidence in the record. (Admin. R. at 39). Hodgson claims that this finding was erroneous. The court disagrees.

The ALJ is responsible for credibility determinations. 20 C.F.R. §§ 404.1529, 416.929. The ALJ's credibility determination "is entitled to deference, especially when supported by specific findings." Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192 (1st Cir. 1987). Hodgson testified that anxiety and agitation prevent her from working. (Admin. R. at 39). In finding otherwise, the ALJ properly noted her ability to carry out activities of daily living, including college attendance, shopping, housework, driving, caring for her son and doing volunteer work. (Id. at 37, 42). The ALJ further noted that she maintained contact with family members and other employees and both her volunteer and goat herding positions. (Id. at 37, 39). Finally, the ALJ noted that Hodgson's treatment providers generally described good mental functioning in her recent history, and that Drs. Sowden, Patalano and Hurley all found her depression to be mild and her limitations no more than moderate. (Id. at 43).

Although Hodgson accurately cites other records which show more severe, her claim that the ALJ did not properly consider them is little more than an invitation to re-weigh evidence, which the court cannot do. Accordingly, the court finds that the ALJ's credibility assessment is supported by the record.

### IV. Conclusion

Because the ALJ has not committed a reversible error in evaluating Hodgson's claim, her motion for an order reversing the Acting Commissioner's decision, (Doc. no. 10), should be denied; the Acting Commissioner's motion for an order affirming her decision, (Doc. no. 14), should be granted; and the clerk of the court should be directed to enter judgment in accordance with this order and close the case.

Any objection to this Report and Recommendation must be filed within 14 days of receipt of this notice. See Fed. R. Civ. P. 72(b)(2). The 14-day period may be extended upon motion. Failure to file a specific written objection to the Report and Recommendation within the specified time waives the right to appeal the district court's order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

_____
Andrea K. Johnstone
United States Magistrate Judge

October 29, 2018

cc:   Judith Brownlow, Esq.
      Janine Gawryl, Esq.
      Sarah E. Choi, Esq.
      John J. Engel, Esq.